UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LENROY RYAN, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
|  | ) | Civil Action No. 24-CV-11054-AK |
| v. | ) | |
|  | ) | |
| PROCESS, INC., PROCESS OHIO CORPORATION, HAMMEL RECYCLINGTECHNIK GmbH, and STOEVELAAR TRADING, BV, | ) ) ) ) | |
|  | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT HAMMEL'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**ANGEL KELLEY, D.J.**

Plaintiff Lenroy Ryan ("Ryan" or "Plaintiff") injured his leg when he was working on the Defendant Hammel's machine. As a result of his injuries, Plaintiff sustained permanent injuries, including the amputation of his left leg. The machine was distributed by the remaining Defendants. Plaintiff's Second Amended Complaint ("Amended Complaint") includes several claims, including defective design, failure to warn, strict liability, breach of warranty, negligence, and negligent training. Pending before the Court is Defendant Hammel's Motion to Dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. [Dkt. 41]. Defendant Stoevelaar Trading, BV ("Stoevelaar") has also filed a Motion to Dismiss for Lack of Personal Jurisdiction which the Court will address separately. For the following

1

reasons, Hammel's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. 41] is **GRANTED** and Plaintiff's Cross-Motion for Jurisdictional Discovery [Dkt. 43] is **DENIED**.[1]

I.  BACKGROUND

Plaintiff brought this suit after sustaining injuries from a metal shredder, which resulted in the amputation of his leg. On October 13, 2022, Ryan was working with the shredder manufactured by Hammel at his place of employment when the machine allegedly jammed and caused him to injure himself. The shredder involved in this incident was manufactured and sold by a German manufacturer, Hammel, to the Dutch distributor, Stoevelaar. Stoevelaar then sold the machine to Monarch Global Equipment, LLC ("Monarch") and shipped it to Baltimore, Maryland, on November 6, 2020. The shredder was then sold to Process, Inc. ("Process"), which sold it to Plaintiff's employer in Massachusetts.[2]

---

[1] Although this Court cannot exercise personal jurisdiction over Hammel, and therefore lacks jurisdiction to address Hammel's 12(b)(6) arguments, it nevertheless takes this opportunity to restate principles of Massachusetts tort law relevant to this case. The Massachusetts Supreme Judicial Court has repeatedly "declined to allow claims for strict liability in tort for defective products . . . [.]" Commonwealth v. Johnson Insulation, 682 N.E.2d 1323, 1326 (Mass. 1997). This basic rule has been consistently followed by Massachusetts state and federal courts. See, e.g., Taupier v. Davol, Inc., 490 F. Supp. 3d 430, 439 (D. Mass. 2020) ("Massachusetts does not recognize strict products liability in tort.") (quoting Smith v. Robertshaw Controls Co., 410 F.3d 29, 32 n.4 (1st Cir. 2005)); Ahren v. Sig Sauer, Inc., No. 21-cv- 11007, 2021 WL 5811795 at *2 (D. Mass. Dec. 7, 2021) ("Massachusetts does not provide a strict liability cause of action for a defective product."). This does not mean that those injured by defective products in the Commonwealth are without redress. Indeed, the Massachusetts legislature "has transformed warranty liability into a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions." Back v. Wickes Corp., 378 N.E.2d 964, 968 (Mass. 1978). Thus, plaintiffs seeking to invoke a strict liability theory to recover for injuries caused by an allegedly defective product must do so by way of "a claim for breach of the implied warranties of merchantability and/or fitness for a particular purpose under Mass. Gen. Laws ch. 106 §§ 2-314 and 2-315 . . . [.]" Philips v. Medtronic, Inc., 754 F. Supp. 2d 211, 216 (D. Mass. 2010); see Swartz v. Gen. Motors Corp., 378 N.E.2d 61, 62 (Mass. 1978) ("[T]here is no 'strict liability in tort' [in Massachusetts] apart from liability for breach of warranty under the Uniform Commercial Code.") (citing Mass. Gen. Laws ch. 106 §§ 2-314, 2-318)). In other words, pure strict products liability exists only within the statutory breach of warranty framework. See Mass. Gen. Laws ch. 106 §§ 2-314, 2-318. Accordingly, a plaintiff may not include a standalone "strict liability" claim in their complaint and expect to survive a 12(b)(6) motion.

[2] It is not clear to the Court what role Process Ohio has in this case.

The case was removed from the Massachusetts Superior Court in Suffolk County on April 22, 2024. After two amended complaints, both Hammel and Stoevelaar moved to dismiss for lack of personal jurisdiction. In its opposition, Ryan filed cross-motions for jurisdictional discovery against Hammel and Stoevelaar. Plaintiff attached the following exhibits to his opposition to Hammel's Motion to Dismiss: third-party data showing that Hammel made 179 shipments to the United States over the past eighteen years; Hammel's webpages in English showing its participation in trade shows in Las Vegas and Atlanta; a Hammel webpage indicating it conducts business in the United States; a Process webpage stating it is "the North American source for Hammel shredders, new and used"; a Hammel webpage listing Process as its United States contact under "Hammel international"; a webpage of another company allegedly using a Hammel shredder in Massachusetts; information for "HAMMEL New York LLC," a New York subsidiary and distributor of Hammel products; and an article describing Hammel's relationship with Bejac Corporation, a distributor serving the western United States.

On April 16, 2025, the Court held a hearing on Hammel's and Stoevelaar's motions to dismiss and on Plaintiff's cross-motions for jurisdictional discovery. Defendants Process, Inc. and Process Ohio Corporation filed answers to the Second Amended Complaint [Dkts. 45, 46] but have not moved to dismiss.

**II.    LEGAL STANDARD**

When personal jurisdiction is contested, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). When the Court assesses its jurisdiction without an evidentiary hearing, the prima facie standard applies. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir.

2002). Under the standard, the plaintiff should "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).

The Court reviews the pleadings, supplemental filings in the record, and undisputed facts, giving credence to the plaintiff's version of genuinely contested facts. Id. While the plaintiff's burden of proof is "light," it nevertheless requires them not to rely on "mere allegations" alone but to point to specific facts in the record that support their claims. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) (citing Daynard, 290 F.3d at 51). The Court "'must accept the plaintiff's (properly documented) evidentiary proffers as true' . . . irrespective of whether the defendant disputes them" for the purposes of the motion. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Foster- Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)). The Court is to view these facts in the light most favorable to the plaintiff's jurisdictional claim. Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The defendant may also offer evidence, but the evidentiary proffers of the defendant "become part of the mix only to the extent that they are uncontradicted." Adelson, 510 F.3d at 48 (citing Massachusetts Sch. of Law at Andover, Inc., 142 F.3d at 34); see Baskin-Robbins, 825 F.3d at 34 ("We may, of course, take into account undisputed facts put forth by the defendant.").

## III. DISCUSSION

### A. Personal Jurisdiction

When determining whether a nonresident defendant is subject to its jurisdiction, "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Baskin-Robbins, 825 F.3d at 34 (quoting Sawtelle v. Farrell, 70 F.3d 1381,

4

1387 (1st Cir. 1995)).  In that posture, Ryan has the burden of satisfying the rigors of "both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).  For reasons explained below, the Court holds that Plaintiff's jurisdictional contention is untenable, and Hammel cannot be subjected to personal jurisdiction in Massachusetts.

### 1. Due Process

The First Circuit employs the following three-part test to determine whether the exercise of personal jurisdiction over a defendant comports with due process: (1) the claims must directly relate to the defendant's forum-state activities; (2) the in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state; and (3) the exercise of personal jurisdiction must, in light of the Gestalt factors, be reasonable.  United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir.1992).  The Court discusses each prong of the jurisdictional calculus in turn.

#### a. Relatedness

To show relatedness, the plaintiff must demonstrate that their "cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Knox v. MetalForming, Inc., 914 F.3d 685, 690-91 (1st Cir. 2019) (citing Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005)).  This is a "flexible, relaxed standard." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994)).  Relatedness requires only that the claim have a "demonstrable nexus" to the defendant's forum contacts. Mass. Sch. of Law, 142 F.3d at 34;  Knox, 914 F.3d at 691.  Plaintiff was injured in Massachusetts by a shredder manufactured by Hammel.  Hammel's alleged contacts with

Massachusetts relate directly to the specific machine involved in the incident that gave rise to this action.  The relatedness requirement is easily met.

### b.  Purposeful Availment

The purposeful availment requirement ensures that the exercise of jurisdiction is voluntary, foreseeable, and not premised on a defendant's "random, fortuitous, or attenuated contacts."  Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  The defendant's conduct and connection with the forum state must be such that it should reasonably anticipate being haled into court there.  Knox, 914 F.3d at 691 (quoting Burger King, 471 U.S. at 474).  This requirement applies equally to foreign defendants.  Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018).

In J. McIntyre Mach., Ltd. v. Nicastro, a divided Supreme Court addressed the issue of exercising personal jurisdiction over a British manufacturer whose product was distributed by an Ohio company and caused injury to the plaintiff in New Jersey.  564 U.S. 873 (2011).  The plurality held that such a defendant must reveal an intent to invoke or benefit from the protection of the forum state's laws.  Concurring only in judgment, Justice Breyer and Justice Alito found no personal jurisdiction under the "stream of commerce plus" analysis.  Id. at 887-89.  Under this theory, mere awareness that the stream of commerce may carry a product into the forum state is not enough; there must be "something more" targeting the specific forum.  Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 112 (1987) ("[S]omething more" may include, "for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to

6

customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.").

Like other circuits, the First Circuit has held that the narrowest, and therefore binding, opinion from McIntyre was Justice Breyer's concurrence. Knox, 914 F.3d at 691; Plixer, 905 F.3d at 10 (quoting Marks v. United States, 430 U.S. 188 (1977)); accord Williams v. Romarm, SA, 756 F.3d 777, 784 (D.C. Cir. 2014) (finding Justice Breyer's concurring opinion controlling under Marks); Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 178 & n.14 (5th Cir. 2013); AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1363 (Fed. Cir. 2012).

Sales by an independent distributor normally do not count as contacts of the manufacturer for purposes of personal jurisdiction. Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 63 n.4 (1st Cir. 2002). Though Hammel may have targeted the United States market in general, it has not revealed an intent to invoke or benefit from the protection of Massachusetts' laws. McIntyre, 564 U.S. at 887 (plurality opinion). Hammel has no offices or employees in the forum, nor does it pay Massachusetts taxes or own property in the state. Plaintiff has not alleged, nor does the record at this stage support the inference, that Hammel advertises in or has sent employees to Massachusetts. The trade shows Hammel employees attended were not in Massachusetts. Therefore, even under the McIntyre concurrence's adoption of the "stream of commerce plus" theory, Plaintiff has not shown "something more" to support the contention that Hammel specifically targeted Massachusetts. McIntyre, 564 U.S. at 899 (Breyer, J., concurring).

This case is unlike Knox, in which the First Circuit found proper the exercise of personal jurisdiction over a German manufacturer whose product travelled through a distributor in Georgia, ultimately injuring the plaintiff in Massachusetts. 914 F.3d at 694. The Knox court

7

distinguished its case from <u>McIntyre</u> largely because the machines in <u>Knox</u> were made-to-order according to the purchaser's specifications.  Moreover, in <u>Knox</u>, the distributor included instruction manuals for the machines that included direct contact information for the manufacturer if the customer needed spare parts.  <u>Knox</u>, 914 F.3d at 693.  The court found it reasonable to infer from these facts that the defendant had opened channels of service with Massachusetts customers that allowed for the proper exercise of personal jurisdiction.

Unlike the manufacturer in <u>Knox</u>, which retained the ability to direct where its products went, sold dozens of expensive products into the forum for nearly two decades, and initiated an ongoing relationship with its in-forum customers, Hammel lacked the ability to control the final location of its products and knew only "that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." <u>McIntyre</u>, 564 U.S. at 879.  Plaintiff has pointed to the possible presence of a second Hammel shredder in Massachusetts, but as the court reasoned in <u>McIntyre</u>, even four machines in the forum state were insufficient to exercise personal jurisdiction over the manufacturer defendant. <u>Id.</u> at 878.  Accordingly, Plaintiff has failed to demonstrate that Hammel's contacts evince purposeful availment of the protections and benefits of Massachusetts law.  For this reason alone, exercising personal jurisdiction over Hammel would violate due process.

### c. Reasonableness

When a court finds that the plaintiff has failed to satisfy the first two prongs of due process, it need not proceed to the reasonableness requirement.  <u>Sawtelle</u>, 70 F.3d at 1394 (noting that "[t]he [g]estalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled.") (quoting <u>United Elec. Workers</u>, 960 F.2d at 1091 n. 11).

Even assuming *arguendo* that Hammel had purposely availed itself of the Massachusetts market, exercising personal jurisdiction would not satisfy the third prong of due process because it would not be reasonable. To assess reasonableness, courts consider the five "Gestalt" factors: (1) the defendant's burden of appearing in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. C.W. Downer, 771 F.3d at 69. These factors are designed to illuminate whether the exercise of jurisdiction is reasonable. Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Courts rely on these factors for close cases. Id. at 65. To be clear, this is not such a case.

The first factor—the defendant's burden—weighs against exercising personal jurisdiction. Hammel is a German company, with its principal place of business in Germany, and has asserted that it would be burdensome to litigate this case in Massachusetts, where it has no offices, operations, or employees. It is true that it is "almost always inconvenient and costly for a party to litigate in a foreign jurisdiction." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 718 (1st Cir. 1996) (quoting Pritzker, 42 F.3d at 64). For this factor to tip the scale, "the defendant must demonstrate that exercise of jurisdiction in the present circumstance is onerous in a special, unusual, or other constitutionally significant way." Id. (internal citation and quotations omitted). The burden of forcing a German corporation with no presence in Massachusetts to appear in the forum is onerous in terms of distance. Medicus Radiology, LLC v. Nortek Med. Staffing, Inc., No. 10-CV-300-PB, 2011 WL 9373, at *5 (D.N.H. Jan. 3, 2011) (holding it is unreasonable to force a Texas corporate defendant with no presence in New Hampshire to appear in the forum); see Philips v. Prairie Eye Center, 530 F.3d 22, 30 (1st Cir. 2008) (holding that the burden on an

Illinois defendant with no connection to the forum state was disproportionate).  The first factor therefore weighs against exercising personal jurisdiction over Hammel.

The second factor, which considers the forum state's interest in adjudicating the dispute, weighs against keeping the suit in Massachusetts.  Though a "state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," Burger King, 471 U.S. at 473, the alleged wrongful conduct by Hammel, the defective design and manufacture of the metal shredder, occurred entirely outside of Massachusetts.  The mere fact that the Plaintiff's injury occurred in Massachusetts "is not . . . enough to establish its substantial interest in the suit."  Merced v. JLG Indus., Inc., 193 F.Supp.2d 290, 295 (D. Mass. 2001); see Medicus, 2011 WL 9373, at *6 (finding that the state's interest in litigation is diminished where alleged tortious conduct occurred outside of forum); Sawtelle, 70 F.3d at 1395 ("[t]his factor . . . cuts against jurisdiction" when "the acts comprising the defendants' alleged negligence occurred almost entirely outside of [the forum].").

Third, while the plaintiff's choice of forum must be accorded a degree of deference, "the plaintiff's *actual* convenience seems to be at best a makeweight in this situation."  Ticketmaster, 26 F.3d at 211 (emphasis in original) (discussing the difficulty in concluding which forum state would be more convenient when the alleged tortious injury and witnesses exist in different forum states).  Here, it is not immediately clear that Massachusetts is the most convenient forum when key witnesses and evidence are likely located in Ohio or abroad.

The fourth factor, the judicial system's interest in obtaining the most effective resolution of the controversy, is usually "a wash."  Nowak, 94 F.3d at 718 (citing Ticketmaster, 26 F.3d at 211).  As the First Circuit has reasoned, "[e]ven though Massachusetts courts can effectively

10

administer justice in this dispute, they have no corner on the market." Baskin-Robbins, 825 F.3d at 41.

The last factor, which can be effectively summed as pertinent policy arguments, addresses the interests of the governments in enacting substantive social policies. See Nowak, 94 F.3d at 719. While Massachusetts has an interest in protecting its citizens from defective products made by foreign manufacturers, Germany and Ohio also have substantial interests in promoting and ensuring product safety, as well as holding accountable the corporations they house. Thus, this last factor does not tip in either parties' favor.

The reasonableness prong evokes "a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 61 (1st Cir. 2016) (quoting Ticketmaster, 26 F.3d at 210). On balance, the "Gestalt" factors make pellucid what was already clear: exercising jurisdiction over Hammel would not be reasonable. Plaintiff's failure to satisfy the purposeful availment prong of due process cannot be overcome.

### 2. Long-Arm Statute

The Massachusetts long-arm statute provides that a court may exercise personal jurisdiction over a person as to a cause of action in law or equity arising from, *inter alia*, the person's "(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth[.]" Mass. Gen. Laws Ann. ch. 223A, § 3.

11

The First Circuit has treated the limits of Massachusetts' long-arm statute as coextensive with those of the Due Process Clause. Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016). The First Circuit has suggested that the Massachusetts long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution. Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 124 (1st Cir. 2022). Having concluded that the Due Process Clause does not permit the exercise of personal jurisdiction over Hammel in this case, the Court "need not untangle this potential 'tension in our precedent here.'" A Corp., 812 F.3d at 59 (quoting Copia, 812 F.3d at 4); Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 95 (1st Cir. 2024) (explaining that although the reach of the Massachusetts long-arm statute may not be identical to that of the Due Process Clause, the court need not inquire into such distinctions when the plaintiff has not satisfied the constitutional minimum demanded by due process).

Because the Court finds that Plaintiff has not satisfied his constitutional burden, the Court does not need to address the statutory requirements. Motus, 23 F.4th at 124 (stating that it would "serve no useful purpose" to analyze statutory authorization under Massachusetts' long-arm statute when plaintiff has not satisfied the federal constitutional requirements for personal jurisdiction); Ward v. AlphaCore Pharma, LLC, 89 F.4th 203, 211 (1st Cir. 2023) (refusing to conduct further statutory analysis when the court has found defendant's activities to be insufficiently related to Massachusetts to satisfy the strictures of due process); Chouinard v. Marigot Beach Club & Dive Resort, No. CV 20-10863-MPK, 2023 WL 2743305, at *1 (D. Mass. Mar. 31, 2023), appeal dismissed, No. 23-1390, 2023 WL 7321758 (1st Cir. June 29, 2023) (declining to address the statutory requirements under the Massachusetts long-arm statute because the court found that plaintiffs have not satisfied their constitutional burden).

### 3. Jurisdictional Discovery

Plaintiff has also requested that the Court allow jurisdictional discovery to obtain interrogatories, document requests, and depositions to "illuminate Defendants' purposeful availment of Massachusetts as a market for the Hammel Shredder and related products." [Dkt. 43 at 8]. It is well-established that "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001) (quotations and citations omitted). This Court has "broad discretion" to determine whether jurisdictional discovery is warranted. Swiss Am. Bank, 274 F.3d at 626. When seeking jurisdictional discovery, the plaintiff has the burden of making "a colorable claim for jurisdiction" and "present[ing] facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 625-26, 627; see also Motus, 23 F.4th at 128 (affirming denial of jurisdictional discovery because plaintiff failed "to explain why jurisdictional discovery was appropriate and what relevant information it hoped to glean through such discovery"). Jurisdictional discovery is appropriate if "a party demonstrates that it can supplement its jurisdictional allegations through discovery." Momenta Pharms., Inc. v. Amphastar Pharms., Inc., 841 F. Supp. 2d 514, 518 (D. Mass. 2012). Though the "colorable" threshold is "low", the plaintiff "must identify a non-frivolous dispute about facts that may yield a sufficient predicate for" jurisdiction. Motus, 23 F.4th at 128 (citing Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008)).

In the instant case, Ryan has failed to make a colorable claim for personal jurisdiction. The requested internal financial information is insufficient to support a showing that Hammel purposefully availed itself of the Massachusetts market. Given the fact that

13

Plaintiff has pointed to only one other possible Hammel shredder in Massachusetts, the amount of revenue derived from sales of Hammel shredders in the forum will likely not be substantial enough with respect to Hammel's total sales to alter the jurisdictional analysis. BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 414 (2017) (clarifying that the key inquiry under purposeful availment is not "the magnitude of the defendant's in-state contacts," but rather an appraisal of the defendant's contacts within the "entirety" of the corporation's activities). Neither would the fact that Hammel might have a partner distributor in the United States be sufficient for satisfying jurisdiction. Cambridge Literary Props., 295 F.3d at 63-64 (finding that sales by an independent distributor do not count as purposeful availment by the manufacturer).

The crux of the inquiry is not whether Hammel intended on targeting the United States *as a whole* but rather whether Hammel intended on specifically targeting Massachusetts. See Sun Life Assur. Co. of Canada, 946 F. Supp. 2d at 193 (declining request for jurisdictional discovery because plaintiff did not allege that the contacts will be based mostly in Massachusetts or that they will be sufficient to meet the jurisdictional requirements); Asahi Metal Industry, 480 U.S. at 112 (holding that mere knowledge that the product may be sold in the forum is not enough without "something more" showing a deliberate targeting of the forum state's market). The information requested by Plaintiff is unlikely to make a material difference for purposes of personal jurisdiction. Given these requests, it is highly unlikely that the Court would find the exercise of jurisdiction proper even if jurisdictional discovery were granted. Accordingly, since Plaintiff has not made any colorable claim, jurisdictional discovery is unwarranted.

### IV.     CONCLUSION

Plaintiff bears the burden of persuading the Court that jurisdiction exists over the Defendant. Plaintiff has failed in this regard, compelling the Court to dismiss Hammel from this

case. This decision is not as unduly harsh as it seems. The suit remains live against three residual defendants. Thus, it is not the end of the road for Plaintiff or this suit. For the foregoing reasons, Defendant Hammel's Motion to Dismiss [Dkt. 41] is **GRANTED** and Plaintiff's Cross-Motion for Jurisdictional Discovery is **DENIED**. [Dkt. 43].

    **SO ORDERED.**

Dated: April 28, 2025                                /s/ Angel Kelley
                                                                  Hon. Angel Kelley
                                                                  United States District Judge