UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LENROY RYAN,<br><br>        Plaintiff,<br><br>v.<br><br>PROCESS, INC., PROCESS OHIO CORPORATION, and MONARCH GLOBAL EQUIPMENT, LLC,<br><br>        Defendants. | Civil Action No. 24-CV-11054-AK |

## MEMORANDUM AND ORDER ON DEFENDANT MONARCH'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**ANGEL KELLEY, D.J.**

Plaintiff Lenroy Ryan ("Plaintiff") sustained multiple permanent injuries while working on a metal shredder machine ("the Shredder"), imported by Stoevelaar Trading BV ("Stoevelaar") and sold to domestic equipment distributor Monarch Global Equipment, LLC ("Monarch"). [Dkt. 58]. Plaintiff's Third Amended Complaint alleges, inter alia, defective design, failure to warn, breach of warranty, strict liability, and negligence. [Id.]. Pending before the Court is Defendant Monarch's Motion to Dismiss Plaintiff's Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. [Dkt. 68]. For the following reasons, Monarch's Motion to Dismiss Plaintiff's Third Amended Complaint [Dkt. 68] is **GRANTED**.

    **I.    BACKGROUND**

On October 13, 2022, Plaintiff was at his job working with a metal shredder when the machine allegedly jammed and injured him, leading to the amputation of his leg. [Dkt. 58 ¶¶ 6-8]

1

("Compl."). The Shredder was manufactured and sold by a German manufacturer, Hammel, to the Dutch distributor, Stoevelaar. [Dkt. 56 at 2]. Stoevelaar then sold the machine to Monarch Global Equipment, LLC ("Monarch") and shipped it to Baltimore, Maryland, as part of the sale, on November 6, 2020. [Dkt. 71]. The Shredder was then sold to Process, Inc. ("Process"), which sold it to Plaintiff's employer in Massachusetts. [Compl. ¶¶ 10, 13].

This case was removed from the Massachusetts Superior Court in Suffolk County on April 22, 2024. [Dkt. 1]. After two amended complaints, both Hammel and Stoevelaar moved to dismiss for lack of personal jurisdiction. [Dkts. 41; 48]. In opposition, Plaintiff filed cross-motions for jurisdictional discovery. [Dkt. 50]. The Court granted Hammel's Motion to Dismiss and denied Plaintiff's Motion for Jurisdictional Discovery against Hammel. [Dkt. 56]. The Court also denied Stoevelaar's first Motion to Dismiss without prejudice and allowed Plaintiff to proceed with limited jurisdictional discovery. [Dkt. 57]. Plaintiff and Stoevelaar conducted jurisdictional discovery, and on July 9, 2025, Stoevelaar filed their second Motion to Dismiss for lack of personal jurisdiction. [Dkt. 70]. On January 13, 2026, the Court granted Stoevelaar's Motion to Dismiss. [Dkt. 77].

On July 3, 2025, Monarch also filed a Motion to Dismiss for lack of personal jurisdiction. [Dkt. 68]. In anticipation of a discovery request from Plaintiff, Monarch submitted an affidavit from its owner ("the Owner") in support of its Motion to Dismiss. [Dkt. 68-2]. Based upon the uncontested information in the Owner's affidavit, Monarch was established by the Owner in 2016, while he was employed at Process and as part of his duties as a Process employee. [Id. ¶¶ 2, 13, 14]. Prior to January 2022, Process could purchase and import machines or equipment under Monarch's name, without notifying the Owner. [Id. ¶ 15]. Monarch and Process

"separated" in January 2022. [Id. ¶ 12]. There was no written contract between Monarch and Process relating to the Owner's employment or Process' use of Monarch. [Id. ¶ 17].

As it relates to the shredder at issue in this lawsuit, Monarch did not manufacture, design, advertise, or market the Shredder in any way. [Id. ¶ 19]. Monarch imported the Shredder from Stoevelaar on November 20, 2020, and delivered it directly to Process in Baltimore, Maryland, after importation. [Id. ¶¶ 20-21]. Monarch did not have any connection with the Shredder after delivering it to Process and played no role in the decision making of where it was to be sold, shipped, or leased. [Id. ¶ 22]. Monarch did not play a role in any decision making regarding the sale of the Shredder to Plaintiff's employer. [Id. ¶ 24]. Finally, at no time prior to the importation of the Shredder did Monarch import any goods that they believe were sold in Massachusetts. [Id. ¶ 25].

In addition to Monarch's affidavit, Plaintiff presented evidence including purchase orders for shredder parts on Monarch letterhead, which were sent by Process employees [Dkt. 72-2 at 10-15], and information about companies with whom Monarch shared bills of lading [Dkt. 72-4].

## II.    LEGAL STANDARD

When personal jurisdiction is contested, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). When courts assess their jurisdiction without an evidentiary hearing, the prima facie standard applies. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002); Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022). Under that standard, the plaintiff should "proffer evidence which, taken at face value, suffices to show all

3

facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).

Courts review the pleadings, supplemental filings in the record, and undisputed facts, giving credence to the plaintiff's version of genuinely contested facts. Id.  While the plaintiff's burden of proof is "light," it nevertheless requires them not to rely on "mere allegations" alone but to point to specific facts in the record that support their claims. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) (citing Daynard, 290 F.3d at 51).  Courts "'must accept the plaintiff's (properly documented) evidentiary proffers as true' . . . irrespective of whether the defendant disputes them" for the purposes of the motion. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)).  Courts view these facts in the light most favorable to the plaintiff's jurisdictional claim. Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  Defendants may also offer evidence, but their evidentiary proffers "become part of the mix only to the extent that they are uncontradicted." Adelson, 510 F.3d at 48 (citing Mass. Sch. of L. at Andover, Inc., 142 F.3d at 34); see Baskin-Robbins, 825 F.3d at 34 ("We may, of course, take into account undisputed facts put forth by the defendant.").

### III.   DISCUSSION

#### A.  Personal Jurisdiction

When determining whether a nonresident defendant is subject to its jurisdiction, "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Baskin-Robbins, 825 F.3d at 34 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)).  In that posture, Plaintiff has the burden of satisfying the rigors of "both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment."

C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).

### a. Long-Arm Statute

Monarch does not argue that the long-arm statute imposes any requirements over the constitutional limits. Therefore, any argument based upon an interpretation of the long-arm statute is waived and the Court will focus its inquiry on the due process analysis. Nandjou v. Marriott International, Inc., 985 F.3d 135, 148 (1st Cir. 2021) (where defendants did not address additional limitations of the Massachusetts long-arm statute, "any argument to the contrary is waived," and the court focused its "inquiry exclusively on the federal constitutional analysis") (quoting Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020)).

### b. Due Process

The First Circuit employs the following three-part test to determine whether the exercise of personal jurisdiction over a defendant comports with due process: (1) the claims must directly relate "to the defendant's forum-state activities;" (2) the "in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state;" and (3) the exercise of personal jurisdiction must, "in light of the Gestalt factors, be reasonable." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). The Court discusses each prong of the jurisdictional calculus in turn.

### i. Relatedness

To show relatedness, the plaintiff must demonstrate that their "cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Knox v. MetalForming, Inc., 914 F.3d 685, 690-91 (1st Cir. 2019) (citing Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005)). This is a "flexible, relaxed standard." N. Laminate Sales, Inc.

v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994)).  Relatedness requires only that the claim have a "demonstrable nexus" to the defendant's forum contacts. Mass. Sch. of Law, 142 F.3d at 34; Knox, 914 F.3d at 691.

Monarch imported the Shredder to Process who then sold it to Plaintiff's employer in Massachusetts.  Although slightly attenuated, this Massachusetts contact is directly related to the claim and meets the relatedness requirement. Knox, 914 F.3d at 691 (finding that the relatedness requirement was "easily met" for the manufacturer who provided the machine to a distributor, who sold it to a company that brought the machine into the forum).

### ii. Purposeful Availment

The purposeful availment requirement ensures that the exercise of jurisdiction is voluntary, foreseeable, and not premised on a defendant's "random, fortuitous, or attenuated contacts." Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  The defendant's conduct and connection with the forum state must be such that it "should reasonably anticipate being haled into court there." Knox, 914 F.3d at 691 (quoting Burger King, 471 U.S. at 474).  This requirement applies equally to foreign defendants. Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018).

In J. McIntyre Mach., Ltd. v. Nicastro, a divided Supreme Court addressed the exercise of personal jurisdiction over a British manufacturer whose product was distributed by an Ohio company and caused injury to the plaintiff in New Jersey. 564 U.S. 873 (2011).  The plurality held that such a defendant must reveal an intent to invoke or benefit from the protection of the forum state's laws. Id. at 887.  Concurring only in judgment, Justice Breyer and Justice Alito found no personal jurisdiction under the "stream of commerce plus" analysis. Id. at 887-89.

Under this theory, mere awareness that the stream of commerce may carry a product into the forum state is not enough; there must be "something more" targeting the specific forum. Asahi Metal Indus. Co., Ltd. v. Superior Ct. Cal., 480 U.S. 102, 111-12 (1987) ("[S]omething more" may include, "for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."). The First Circuit has held that the narrowest, and therefore binding, opinion from McIntyre was Justice Breyer's concurrence. Knox, 914 F.3d at 691.

Plaintiff alleges that Monarch has an international sales network and marketed the Shredder through Process, who sold it to a company in Massachusetts. [Dkt. 72 at 5]. Monarch and Process are different corporate entities. [Compl. ¶¶ 2, 3, 5]. Therefore, Plaintiff must demonstrate that Monarch, by its own conduct, targeted Massachusetts in some way. Asahi, 480 U.S. at 112 ("Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State. . ."). Monarch's deliberate placement of the Shredder into the stream of commerce, which ultimately reached Massachusetts, is not sufficient to establish personal jurisdiction. Id. ("The placement into the stream of commerce, without more, is not an act of the defendant purposely directed towards the forum State.").

Monarch presents evidence that they did not manufacture, design, advertise, or market the Shredder. [Dkt. 72-3 ¶ 19]. Nor did Monarch "have any involvement in the decision making of where [the Shredder] would be sold, shipped, or leased." [Dkt. 72-3 ¶ 22]. Monarch imported the Shredder from Stoevelaar and delivered it directly to Process immediately after importation. [Dkt. 72-3 ¶¶ 20-21]. Plaintiff has not contested these facts nor provided any additional facts to demonstrate Monarch advertised in Massachusetts, specifically targeted distributors who sold

7

products in Massachusetts, knew that their imports would ultimately be used in Massachusetts, or targeted Massachusetts in any other way. Additionally, there is no evidence that Process used Monarch's name to market in, import to, or otherwise target Massachusetts.

Rather than rebut Monarch's evidence, Plaintiff points to the relationship between Monarch and Process to demonstrate personal jurisdiction. Plaintiff alleges that "Process and Monarch were what seems to be one company or sister companies." [Dkt. 72 at 5]. Under Plaintiff's theory, the Court has personal jurisdiction over Monarch for Process' targeting of Massachusetts, because Process and Monarch are the same or sister companies.

Courts may "exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." Ascend Learning, LLC v. Bryan, 22-CV-11978-ADB, 2023 WL 5279643, at *5 (D. Mass. Aug. 16, 2023) (quoting CDM Smith, Inc. v. Thevar, No. 21-CV-10249, 2022 WL 4629239, at *8 (D. Mass. Sep. 30, 2022)). The First Circuit treats this as analogous to piercing the corporate veil. See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992); Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007).

In Massachusetts, the standard for piercing the corporate veil is "demanding" and the veil "may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity." Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 372 (D. Mass. 2017) (quoting Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 100 (D. Mass. 2015)); Commonwealth Aluminum Corp. v. Baldwin Corp., 980 F. Supp. 598, 605 (D. Mass. 1997) ("[P]laintiffs 'must meet a very high standard' before they will be allowed to disregard a corporate form.") (quoting

Am. Home Assur. Co. v. Sport Maska, Inc., 808 F. Supp. 67, 73 (D. Mass. 1992)); United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1091 ("Under Massachusetts common law, disregarding the corporate form is permissible only in rare situations."); Spaneas v. Travelers Indem. Co., 423 Mass. 352, 354 (1996) (noting that the corporate veil will only be pierced to prevent gross inequity).

Piercing the veil may be appropriate "(a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence . . . or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities." My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 752 (Mass. 1968).

Massachusetts courts consider the following twelve factors when determining whether either of these circumstances are met:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Att'y Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass. 2000) (citing Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14-16 (1st Cir. 1985)). No one factor or combination of factors is determinative. TechTarget, Inc. v. Spark Design, LLC, 746 F. Supp. 2d 353, 357 (D. Mass. 2010) (a numerical imbalance of the factors is not determinative because

"[t]he factors are weighted, not counted") (quoting George Hyman Constr. Co. v. Gateman, 16 F. Supp. 2d 129, 158 (D. Mass. 1998)).

Even reading the facts in the light most favorable to Plaintiff, Plaintiff does not meet the demanding standard to pierce the corporate veil. Plaintiff does not address the twelve factors the Court must consider, nor does he address the two overarching circumstances under which piercing the corporate veil may be appropriate. Plaintiff has also not evinced any "gross inequity" or other "equitable concerns" that are "typically require[d]" to "disregard" the "corporate form." Lothrop, 95 F. Supp. 3d at 103.

Instead, without explanation, he points to the Owner's employment at Process from the time that Monarch was created, in 2016, until Monarch and Process "separated," in 2022. [Dkt. 72 at 5 (referencing [Dkt. 72-3 ¶¶ 3, 12, 13])]. However, two companies sharing employees is not sufficient to pierce the corporate veil. See Am. Home Assurance Co., 808 F. Supp. at 73 ("That a parent and a subsidiary share common officers, by itself, is not enough to support the alter-ego theory."); Tassinari v. Salvation Army Nat'l Corp., 610 F. Supp. 3d 343, 356 (D. Mass. 2022) ("[T]he evidence of overlapping leadership and common policies does not satisfy the jurisdictional standard without more evidence of overwhelming control.").

Plaintiff also points to purchase orders for shredder parts which were printed on Monarch's letterhead and sent to Stoevelaar by a Process employee. [Dkt. 72-2 at 12-20]. However, companies may work closely with one another, even for an extended period of time, without losing their unique corporate identities and liabilities. See Lothrop, 95 F. Supp. 3d at 103 ("[A] high degree of cooperation between the two corporations, including occasionally sharing costs and personnel or providing services to each other," does not demonstrate "disregard of the separate entities."); Medici, 239 F. Supp. at 372 (facts not sufficient to pierce the corporate veil

10

when plaintiff proffered evidence that companies "worked together," one company "took on certain responsibilities" that the other company was obligated to perform, "several individuals serve as officers of both [companies], and the [companies'] websites suggest that the corporations have a close working relationship").

Although Plaintiff raised no further arguments, the Court will also note that the Owner's establishment of Monarch as part of his job at Process is also insufficient to pierce the corporate veil. CDM Smith, Inc, v. Thevar, 2022 WL 4629239, at *8 (D. Mass. Sept 30, 2022) (holding that the court had jurisdiction over an individual defendant but not over a company that the individual defendant created). Similarly, Process' use of Monarch's name does not warrant piercing the corporate veil or demonstrate that Process exerted "pervasive control" over Monarch. See John T. Callahan & Sons, Inc. v. Dykeman Elec. Co., Inc., 266 F. Supp. 2d 208, 233 (D. Mass. 2003) (declining to pierce the corporate veil where "Harrier purchased the right to use the Dykeman name and filed the proper corporate papers designating Dykeman Electrical Contractors as the company's fictitious name").

Taken in total, all of Plaintiff's evidence does not come close to showing that Monarch was an alter ego of Process, such that this Court can exercise jurisdiction over it.

### iii.     Reasonableness

When a court finds that the plaintiff has failed to satisfy the first two prongs of due process, it need not proceed to the reasonableness requirement. Sawtelle, 70 F.3d at 1394 (noting that "[t]he [g]estalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled.") (quoting United Elec., Radio, and Machine Workers of Am., 960 F.2d at 1091 n.11). As we have found that jurisdiction over Monarch does not meet the "purposeful availment" prong, the Court declines to address the reasonableness factors.

       **c. Jurisdictional Discovery**

Plaintiff also cross-moved for jurisdictional discovery in their opposition to Defendant's Motion to Dismiss. [Dkt. 72]. This Court has "broad discretion" to determine whether jurisdictional discovery is warranted. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001). When seeking jurisdictional discovery, Plaintiff has the burden of making "a colorable claim for personal jurisdiction" and "present[ing] facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 625-26; see also Motus, 23 F.4th at 128 (affirming denial of jurisdictional discovery because plaintiff failed "to explain why jurisdictional discovery was appropriate and what relevant information it hoped to glean through such discovery. . .").

Plaintiff has not made a colorable claim for jurisdiction or explained why jurisdiction would be found if discovery were permitted. Further, jurisdictional discovery was previously granted to Defendant Stoevelaar. In that discovery, Stoevelaar also produced evidence pertaining to Monarch. Nonetheless, Plaintiff failed to produce evidence that this Court has jurisdiction over Monarch. Accordingly, jurisdictional discovery is unwarranted.

## IV.    CONCLUSION

Plaintiff failed to meet their burden of persuading the Court that jurisdiction exists over the Defendant. For the foregoing reasons, Defendant Monarch's Motion to Dismiss [Dkt. 68] is **GRANTED.**

    **SO ORDERED.**

Dated: January 21, 2026                           /s/ Angel Kelley
                                                                        Hon. Angel Kelley
                                                                        United States District Judge